**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **MICHELE BURNS**,<br>36379 Capel Rd.<br>Grafton, OH 44044<br><br>and<br><br>**JOSEPH KRUSZYNSKI**,<br>36379 Capel Rd.<br>Grafton, OH 44044<br><br>       Plaintiffs,<br><br>  v.<br><br>**FREEDOM MORTGAGE CORPORATION**,<br>c/o CT Corporation System<br>4400 Easton Commons Way, Ste. 125<br>Columbus, OH 43219<br><br>      Defendant. | Case No.<br><br>Judge<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiffs Michele Burns and Joseph Kruszynski, through counsel, for their Complaint for Damages against Defendant Freedom Mortgage Corporation, state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.     Plaintiffs Michele Burns and Joseph Kruszynski (collectively, "Plaintiffs") are the owners of residential real property, located at and commonly known as 36379 Capel Rd., Grafton, OH 44044 (the "Home").

2.     Plaintiffs currently maintain the Home as their primary, principal residence, and have so maintained the Home for all times relevant to the allegations of the Complaint.

3.     Defendant Freedom Mortgage Corporation ("Defendant" or "Freedom") is a foreign corporation incorporated under the laws of the State of New Jersey that maintains its headquarters and principal place of business at 951 Yamato Rd., Ste. 175, Boca Raton, FL 44431.

4.     Freedom is the servicer of a note executed by Plaintiffs (the "Note") and of a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan").

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA), and the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* (TILA).

6.     This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

7.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

8.     This action is filed to enforce statutory provisions of RESPA and TILA, as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X") and 12 C.F.R. § 1026.1, *et seq.* ("Regulation Z").

9.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013) and the Mortgage Servicing Rules Under the Truth in Lending Act, 78 Fed. Reg. 10901 (February 14, 2013) (Regulation Z), which became effective on January 10, 2014.

11.     Plaintiffs assert claims for relief against Freedom for violations of the specific rules under RESPA, Regulation X, TILA, and Regulation Z, as set forth, *infra*.

12.     Freedom is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

13.     The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

14.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

15.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

16.     Plaintiffs have a private right action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

17.     TILA provides that a creditor or servicer of a home loan shall provide an accurate payoff balance within a reasonable period, but within seven (7) business days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g.

18.     Through Regulation Z, the CFPB has provided guidance for the interpretation of certain TILA provisions, including servicers' duties related to responding to requests for a payoff balance.

19.     Regarding payoff statements, Regulation Z provides that:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of

a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.

12 C.F.R. § 1026.36(c)(3).

20.    The Loan is a closed-end consumer credit transaction secured by the Home, a home loan, and a consumer credit transaction secured by the Home, as contemplated by TILA and Regulation Z. 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(b).

21.    Plaintiffs have a private right action under TILA and Regulation Z pursuant to 15 U.S.C. § 1640(a) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

22.    Plaintiffs also assert statutory claims for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

## **FACTUAL BACKGROUND**

### **(Freedom Fails to Timely and Properly Pay Property Taxes and Insurance)**

23.    On January 22, 2021, Plaintiffs obtained the Loan from non-party American Midwest Mortgage Corporation.

24.    Plaintiffs set up automatic recurring payments to Freedom and began remitting a monthly payment of $1,191.87 to Freedom. A copy of Plaintiffs' monthly mortgage statements is attached as **Exhibit 1**.

25.    According to the Lorain County Auditor, the total tax amount owed for Tax Year 2020 was $2,515.64. A copy of the Lorain County Auditor Report for the Home is attached as

**Exhibit 2**.

26.      However, as shown by Plaintiffs' August 2021 Mortgage Statement, Freedom inexplicably made a tax disbursement on June 21, 2021 in the amount of $2,216.95. *See* Exhibit 1.

27.      Instead of paying the property taxes for the Home located at 36379 Capel Rd., Freedom instead paid the property taxes for a parcel located at 36451 Capel Rd. (the "36451 Property"). A copy of the Lorain County Auditor Report for the 36451 Property is attached as **Exhibit 3**.

28.      As shown by Plaintiffs' December 2021 Mortgage Statement, Freedom made a tax disbursement in the amount of $1,257.81 on November 1, 2021 in satisfaction of the property taxes due on the Home for the second half of Tax Year 2020. *See* Exhibit 1.

29.      As a result of Freedom's payment of taxes for two parcels, Freedom demanded that Plaintiffs begin remitting a monthly payment of $1,492.57, a $300.70 increase, starting with the payment due for November 2021. *See* Exhibit 1.

30.      Plaintiffs received no notice from Freedom stating that their monthly payment amount would be changing.

31.      Plaintiffs paid the $300.70 increase from November 2021 through March 2022- a total of $1,503.50. *See* Exhibit 1.

32.      As shown by Plaintiffs' February 2022 Mortgage Statement, Freedom made a tax disbursement in the amount of $1,399.51 on January 25, 2022 in satisfaction of the property taxes due on the Home for the first half of Tax Year 2021. *See* Exhibit 1.

33.      As shown by Plaintiffs' April 2022 Mortgage Statement, Freedom noted an escrow refund of $653.41 and escrow receipt of $2,216.95. *See* Exhibit 1.

34.     On or about March 23, 2022, Freedom made a second error by sending the $2,216.95 escrow receipt back to the Lorain County Auditor, which applied it to Plaintiffs' taxes due for the second half of Tax Year 2021. *See* Exhibit 2.

35.     Sometime in September 2022, Freedom took $2,052,92 out of Plaintiffs' escrow account. As of this time, it is unclear where this money has been sent or transferred and Freedom has failed to explain to Plaintiffs why this money was taken.

36.     Freedom also failed to timely pay Plaintiffs' homeowners insurance, leaving the Home uninsured for approximately a month.

**(Plaintiffs' Attempts to Have Freedom Correct its Errors)**

37.     Upon learning that Freedom was charging them additional amounts, Plaintiffs began to investigate the issue and contacted the Lorain County Auditor and spent countless hours on the phone with Freedom trying to figure out what went wrong.

38.     On or about March 10, 2022, Freedom sent Plaintiffs the escrow refund check of $653.41, however this amount failed to fully compensate Plaintiffs for the additional sums they paid for the previous months.

39.     Since the escrow refund check did not fully compensate Plaintiffs, Plaintiffs did not cash it.

40.     As Freedom refused to correct its error, Plaintiffs contacted a local news station for help. A copy of the March 15, 2022 news report is attached as **Exhibit 4**.

41.     The local news station reached out to Freedom about the error, and Freedom responded that "the issue has been resolved and her account has been made whole." *See* Exhibit 4.

42.     However, Plaintiffs' account was not "made whole" because Freedom failed to refund Plaintiffs the entirety of the additional amounts they paid from November 2021 through

March 2022.

43.     At the end of March 2022, Plaintiffs engaged Dann Law for representation to help correct Freedom's error and request information relating to the Loan.

44.     On April 8, 2022, Plaintiffs, through counsel, sent the following pieces of correspondence, all classified as requests for information pursuant to 12 C.F.R. § 1024.36, to Freedom at the address designated by Freedom for receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c) (the "Designated Address"):

a.     Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" seeking information concerning the Loan, specifically an itemized payoff statement and the name, address, and contact information for the current owner or assignee, master servicer, and current servicer of the Loan ("RFI #1"); and

b.     Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking additional information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items ("RFI #2").

Copies of RFI #1 and RFI #2 and tracking information evidencing delivery of RFI #1 and RFI #2 are attached as **Exhibit 5** and **Exhibit 6**, respectively.

45.     On April 8, 2022, Plaintiffs, through counsel, sent a notice of error and third request for information ("NOE #1" and "RFI #3", respectively) to Freedom at the Designated Address. A copy of NOE #1/RFI #3 and tracking information evidencing delivery of NOE #1/RFI #3 is attached as **Exhibit 7**.

46.    Through NOE #1, Plaintiffs asserted that:

a.    Freedom mismanaged the Loan's escrow account and overcharged for monthly escrow amounts when such was not warranted; and

b.    Freedom failed to provide Plaintiffs with escrow analyses explaining that their monthly escrow obligations would be changing.

*See* Exhibit 7.

47.    Through RFI #3, Plaintiffs requested:

a.    A breakdown of any payment remitted to, as well as any refunds received from, the Lorain County Auditor related to the Home;

b.    A copy of any communications between Freedom and the Lorain County Auditor related to the Home since June 1, 2021;

c.    A copy of any communication logs concerning the Loan and/or the escrow account for the Loan since June 1, 2021; and,

d.    A copy of any servicing notes for the Loan since June 1, 2021.

*See* Exhibit 7.

48.    Freedom received the RFI #1, RFI #2, and NOE #1/RFI #3 (the "April 2022 Letters") at the Designated Address on April 15, 2022. *See* Exhibit 5, Exhibit 6, and Exhibit 7.

49.    Freedom failed to send any notice acknowledging receipt of the April 2022 Letters to Plaintiffs until May 4, 2022 (the "Acknowledgment"). A copy of the Acknowledgment is attached as **Exhibit 8**.

50.    Freedom failed to timely mail any substantive response to the April 2022 Letters.

51.    As a result of Freedom's failure to timely respond to RFI #2, on or about May 13, 2022, Plaintiffs, through counsel, sent a second notice of error ("NOE #2") to Freedom to the

Designated Address via Certified Mail. A copy of NOE #2 and tracking information evidencing delivery of NOE #2 is attached as **Exhibit 9**.

52.     Through NOE #2, Plaintiffs asserted that:

a.   Freedom failed to provide the identify of and relevant contact information for the owner or assignee, master servicer, and current servicer of the Loan; and

b.   Freedom failed to provide Plaintiffs with an accurate statement of the total outstanding balance that would be required to pay the Loan in full.

*See* Exhibit 9.

53.     Freedom received NOE #2 at the Designated Address on May 21, 2022. *See* Exhibit 9.

54.     Freedom failed to timely mail any substantive response to NOE #2.

55.     As a result of Freedom's failure to timely respond to RFI #2, on June 7, 2022, Plaintiffs, through counsel, sent a third notice of error ("NOE #3") to Freedom to the Designated Address via Certified Mail. A copy of NOE #3 and tracking information evidencing delivery of NOE #3 is attached as **Exhibit 10**.

56.     Through NOE #3, Plaintiffs asserted that Freedom failed to provide the information and documents requested through RFI #2 and made the information requests contained in RFI #2 anew. *See* Exhibit 10.

57.     Freedom received NOE #3 at the Designated Address on June 11, 2022. *See* Exhibit 10.

58.     On June 20, 2022, Freedom sent Plaintiffs a response to the April 2022 Letters, NOE #2, and NOE #3 (the "RFI/NOE Response"). A copy of the cover pages of the RFI/NOE Response is attached as **Exhibit 11**.

59. In the RFI/NOE Response, Freedom states:

> Per our Executive Team the matters provided in the Notice of Error dated April 8, 2022 were handled, verbally, with the borrowers directly. A written response was not sent as the matter was deemed completed after our Executive Team spoke with them.

*See* Exhibit 11.

60. Despite the implication by Freedom, Freedom's verbal communications with Plaintiffs occurred before Freedom received NOE #1 and Freedom did not speak with Plaintiffs regarding this error after receipt of NOE #1.

61. Additionally, Freedom failed to provide Plaintiffs with an accurate payoff statement or any of the information requested by RFI #3.

## IMPACT AND DAMAGES

62. Freedom's mishandling of the payments for the Home's property taxes and refusal to refund overcharges have caused Plaintiffs to incur attorneys' fees and costs in attempts to correct such errors and obtain information relating to the Loan.

63. Freedom's improper actions caused Plaintiffs to suffer from actual and proximate damages including, but not limited to:

    a. Improper fees and charges imposed on the Loan, the collection of such fees, including any late fees and other default servicing related fees for which Plaintiffs are personally obligated or which otherwise negatively impacts any equity in the Home to which they are entitled, and refusal to refund the full amount of the improperly collected fees and charges;

    b. Legal fees, costs, and expenses to submit three requests for information and three notices of error to Freedom in a good faith attempt to obtain information to ascertain the nature of the problems at hand and to otherwise amicably

resolve this matter, or to have Freedom mitigate the harm caused to Plaintiffs to which they did not receive a proper or adequate responses; and,

c.  Severe emotional distress driven by Freedom's failure to properly handle Plaintiffs' escrow account and subsequent inability to make Plaintiffs "whole" and by justified fear that such blatant indifference would result in the filing of a foreclosure action, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

### PATTERN AND PRACTICE OF FREEDOM'S
### VIOLATIONS OF RESPA AND REGULATION X

64.  Freedom's actions are part of a pattern and practice of behavior in violation of Plaintiffs' rights and in abdication and contravention of Freedom's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

65.  Freedom has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

66.  Plaintiffs have reviewed the CFPB's consumer complaint database and have identified narratives asserting that Freedom engaged in similar conduct against other borrowers. In particular, Plaintiffs have reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 12**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Freedom has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

**COUNT ONE**
**VIOLATIONS OF RESPA, 12 C.F.R. § 1024.34 AND 12 U.S.C. § 2605**

67.     Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 66 in their entirety, as if fully rewritten herein.

68.     12 U.S.C. § 2605(g) provides:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

*See also* 12 C.F.R. § 1024.34(a); 12 C.F.R. § 1024.17(k)(1).

69.     12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not ... fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

70.     The Loan included an escrow account and Plaintiffs were current on their mortgage payments for all times relevant to allegations contained in the Complaint.

71.     Freedom improperly paid property taxes for the 36451 Property instead of the Home, and subsequently paid the property taxes for the Home, creating an escrow shortage.

72.     Due to this error, Freedom demanded additional escrow amounts of $300.70 each month and Plaintiffs paid this increase from November 2021 through March 2022 for a total of $1,503.50. *See* Exhibit 1.

73.     Despite bringing these errors to Freedom's attention repeatedly, Freedom has failed to correct its errors, resulting in further errors in the accounting of the Loan, such as Freedom remitting payments to the Lorain County Auditor that were not due yet and in amounts in excess

of Plaintiffs' tax obligation.

74.    Freedom's failures to make timely and proper payments from the Loan's escrow account constitute distinct violations of 12 U.S.C. §§ 2605(g) and (k)(1)(E) and 12 C.F.R. § 1024.34(a).

75.    Freedom's actions caused Plaintiffs to suffer actual damages, including, but not limited to, improper fees and charges being assessed to the Loan, attorneys' fees incurred for the time in preparing the requests for information and NOE #1, postage costs for mailing the requests for information and NOE #1, and extreme emotional distress. *See* ¶ 63.

76.    Freedom's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights and in abdication of Freedom's obligations under RESPA and Regulation X.

77.    As a result of Freedom's actions, Freedom is liable to Plaintiffs for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

78.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

## <u>COUNT TWO</u>
### VIOLATIONS OF RESPA, 12 C.F.R. § 1024.36 AND 12 U.S.C. § 2605(k)

79.    Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 66 in their entirety, as if fully rewritten herein.

80.    RESPA was enacted, in part, to ensure "that consumers throughout the Nation are provided with greater and more timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

81.    "A servicer shall comply with the requirements of this section for any written

request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

82.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

83.    "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the request for information." 12 C.F.R. § 1024.36(c).

84.    A servicer must respond to a request for information by:

    (i)   Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

    (ii)  Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

85.    Furthermore, a servicer must properly respond to a request for information within the following deadlines:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

    (A)  Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other

relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

86.    RFI #1, RFI #2, and RFI #3 (collectively, the "RFIs") each constitute a request for information as defined by 12 C.F.R. § 1024.35(a) as they are written requests from Plaintiffs that included their names, mortgage loan account number, and property address and requested information related to the Loan. *See* Exhibit 5, Exhibit 6, and Exhibit 7.

87.    On April 8, 2022, Plaintiffs, through counsel, submitted the RFIs to Freedom at its Designated Address. *See* Exhibit 5, Exhibit 6, and Exhibit 7.

88.    Freedom received the RFIs at the Designated Address on April 15, 2022. *See* Exhibit 5, Exhibit 6, and Exhibit 7.

89.    Freedom was required to provide written acknowledgment of the RFIs by April 22, 2022, or within five (5) business days of receiving the RFIs. *See* 12 C.F.R. § 1024.36(c).

90.    Freedom failed to send any notice acknowledging receipt of the RFIs until May 4, 2022. *See* Exhibit 8.

91.    Although Plaintiffs have not suffered actual monetary damages as a result of Freedom's failure to timely acknowledge receipt of the RFIs, Freedom's conduct demonstrates a pattern and practice of noncompliance with its RESPA obligations.

92.    Freedom failed to send any substantive response to the RFIs until the RFI/NOE Response it mailed on June 20, 2022. *See* Exhibit 11.

**(RFI #1)**

93.    Freedom was required to provide a written response to RFI #1 by April 29, 2022,

or within ten (10) business days of receiving RFI #1, as RFI #1 was a request seeking the identity and contact information for the owner and/or assignee of the Loan. *See* Exhibit 5; 12 C.F.R. § 1024.36(d)(2)(i)(A).

94. A servicer may not extend the time period for requests for information governed by 12 C.F.R. § 1024.36(d)(2)(i)(A). 12 C.F.R. § 1024.36(d)(2)(ii).

95. Freedom failed to send written correspondence providing Plaintiffs with the identity and contact information for the owner or servicers of the Loan by April 29, 2022.

96. As a result of this failure, on or about May 13, 2022, Plaintiffs sent NOE #2 to Freedom wherein Plaintiffs made the information requests contained in RFI #1 anew. *See* Exhibit 9.

97. Despite receipt of NOE #2, Freedom again failed to send timely written correspondence providing Plaintiffs with the identity and contact information for the owner or servicers of the Loan.

98. Freedom did not provide Plaintiffs with identity and contact information for the owner and servicers of the Loan until Freedom mailed the RFI/NOE Response on June 20, 2022. *See* Exhibit 11.

99. Freedom's actions constitute a violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) and has caused Plaintiffs to suffer actual damages as detailed, *supra*, at ¶ 63, including, but not limited to incurring attorneys' fees and costs associated with the preparing and sending of NOE #2, which would not have been necessary but for Freedom's failure to timely and properly respond to RFI #1.

100. Further, Freedom's failure to comply with 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) caused Plaintiffs' attorneys' fees and costs associated with the preparation of RFI

#1 and the renewed request of NOE #2 to metamorphose into damages. *Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013).

101.     Freedom's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights and in abdication of Freedom's obligations under RESPA and Regulation X.

102.     As a result of Freedom's actions, Freedom is liable to Plaintiffs for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

103.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

**(RFI #2 and RFI #3)**

104.     Freedom was required to provide a written response to RFI #2 and RFI #3 by May 27, 2022, or within thirty (30) business days of receiving RFI #2 and RFI #3. *See* <u>Exhibit 6</u> and <u>Exhibit 7</u>; 12 C.F.R. § 1024.36(d)(2)(i)(A).

105.     Freedom failed to send any written correspondence providing Plaintiffs with the information and documents requested by RFI #2 and RFI #3 by May 27, 2022.

106.     As a result of this failure, on June 7, 2022, Plaintiffs sent NOE #3 to Freedom wherein Plaintiffs made the information requests contained in RFI #2 anew. *See* <u>Exhibit 10</u>.

107.     Freedom did not provide Plaintiffs with the most of the information and documents requested by RFI #2 until Freedom mailed the RFI/NOE Response on June 20, 2022. *See* <u>Exhibit 11</u>.

108.     The RFI/NOE Response fails to provide any of the information or documents requested by RFI #3. *See* <u>Exhibit 7</u> and <u>Exhibit 11</u>.

109.    Freedom's actions constitute a violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) and has caused Plaintiffs to suffer actual damages as detailed, *supra*, at ¶ 63, including, but not limited to incurring attorneys' fees and costs associated with the preparing and sending of NOE #3, which would not have been necessary but for Freedom's failure to timely and properly respond to RFI #2.

110.    Further, Freedom's failure to comply with 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) caused Plaintiffs' attorneys' fees and costs associated with the preparation of RFI #2 and RFI #3 to metamorphose into damages. *See Marais I* and *Marais II*.

111.    Freedom's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights and in abdication of Freedom's obligations under RESPA and Regulation X.

112.    As a result of Freedom's actions, Freedom is liable to Plaintiffs for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

113.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

### **COUNT THREE**
### **VIOLATIONS OF RESPA, 12 C.F.R. § 1024.35 AND 12 U.S.C. § 2605(k)**

114.    Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 66 in their entirety, as if fully rewritten herein.

115.    "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

116.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a)

provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

117.    A servicer must respond to a notice of error by either:

(A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)    Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

118.    A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(A)    Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B)    Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C)    For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

119.    "A servicer of a federally related mortgage shall not...fail to take timely action to

respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

120. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

121. NOE #1 and NOE #2 constitute notices of error as defined by 12 C.F.R. § 1024.35(a) as each is a written notice from Plaintiffs that includes their names, mortgage loan account number, and property address and asserts an error that they believed to have occurred. *See* Exhibit 7 and Exhibit 9.

**(NOE #1)**

122. On April 8, 2022, Plaintiffs, through counsel, submitted NOE #1 to Freedom at the Designated Address. *See* Exhibit 7.

123. Through NOE #1, Plaintiffs asserted that:

    a. Freedom mismanaged the Loan's escrow account and overcharged for monthly escrow amounts when such was not warranted; and

    b. Freedom failed to provide Plaintiffs with escrow analyses explaining that their monthly escrow obligations would be changing.

*See* Exhibit 7.

124. Freedom received NOE #1 at the Designated Address on April 15, 2022. *See* Exhibit 7.

125. Freedom was required to provide written acknowledgment of NOE #1 by April 22, 2022, or within five (5) business days of receiving NOE #1. *See* 12 C.F.R. § 1024.35(4).

126.   Freedom failed to send any notice acknowledging receipt of NOE #1 until May 4, 2022. *See* Exhibit 8.

127.   Although Plaintiffs have not suffered actual monetary damages as a result of Freedom's failure to timely acknowledge receipt of NOE #1, Freedom's conduct demonstrates a pattern and practice of noncompliance with its RESPA obligations.

128.   Freedom was required to send a written response to NOE #1 by May 27, 2022, or within thirty (30) business days of receiving NOE #1. See 12 C.F.R. § 1024.35(e)(3)(i)(C).

129.   Freedom failed to send any substantive response to NOE #1 until the RFI/NOE Response it mailed on June 20, 2022. *See* Exhibit 11.

130.   The RFI/NOE Response states:

> Per our Executive Team the matters provided in the Notice of Error dated April 8, 2022 were handled, verbally, with the borrowers directly. A written response was not sent as the matter was deemed completed after our Executive Team spoke with them.

*See* Exhibit 11.

131.   Handling the errors asserted by NOE #1 "verbally" and without providing a written response to Plaintiffs is prohibited. 12 C.F.R. § 1024.35(e)(1)(i)

132.   Despite the implication by Freedom, Freedom's verbal communications with Plaintiffs occurred before Freedom received NOE #1 and Freedom did not speak with Plaintiffs regarding this error after receipt of NOE #1.

133.   Freedom failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Freedom did not admit that any errors occurred as alleged in NOE #1.

134.   Freedom did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear that Freedom did not perform a reasonable investigation into the errors alleged through NOE #1 because: (1) Freedom failed to send a timely, written response to NOE #1; (2) Freedom relied

on verbal conversations that occurred before NOE #1 was prepared and mailed to Freedom; and, most importantly, (3) Freedom has failed to correct its errors and refused to make Plaintiffs "whole" as promised.

135.    Freedom's failure to timely and properly respond to NOE #1 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #1 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and caused Plaintiffs to suffer actual damages, including, but not limited to Freedom's failure to refund the overcharges it collected from Plaintiffs. *See Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1246 (11th Cir. 2016) ("This statutory mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary.").

136.    Freedom's conduct also caused Plaintiffs to suffer severe emotional distress driven by fear and uncertainty in their financial well-being and their obligations under the Loan and to the Lorain County Auditor which has resulted in loss of sleep, anxiety, depression, and other significant harm.

137.    Further, Freedom's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) caused Plaintiffs' attorneys' fees and costs associated with the preparation of NOE #1 to metamorphose into damages. *See Marais I* and *Marais II*.

138.    Freedom's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights and in abdication of Freedom's obligations under RESPA and Regulation X.

139.    As a result of Freedom's actions, Freedom is liable to Plaintiffs for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

140.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

**(NOE #2)**

141.     On or about May 13, 2022, Plaintiffs, through counsel, submitted NOE #2 to Freedom at the Designated Address. *See* Exhibit 9.

142.     Through NOE #2, Plaintiffs asserted that:

a.   Freedom failed to provide the identify of and relevant contact information for the owner or assignee, master servicer, and current servicer of the Loan; and

b.   Freedom failed to provide Plaintiffs with an accurate statement of the total outstanding balance that would be required to pay the Loan in full.

*See* Exhibit 9.

143.     Freedom received NOE #2 at the Designated Address on May 21, 2022. *See* Exhibit 9.

144.     Freedom was required to send a written response to NOE #2 by June 1, 2022, or within seven (7) business days of receiving NOE #2. *See* 12 C.F.R. § 1024.35(e)(3)(i)(A).

145.     Freedom failed to send any substantive response to NOE #2 until the RFI/NOE Response it mailed on June 20, 2022. *See* Exhibit 11.

146.     Freedom failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Freedom did not admit that any errors occurred as alleged in NOE #2.

147.     Freedom did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear from the lack of any timely response to NOE #2 that Freedom did not perform a reasonable investigation into the errors alleged through NOE #2.

148.     Freedom's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k)

caused Plaintiffs' attorneys' fees and costs associated with the preparation of NOE #2 to metamorphose into damages. *See Marais I* and *Marais II*.

149. Freedom's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights and in abdication of Freedom's obligations under RESPA and Regulation X.

150. As a result of Freedom's actions, Freedom is liable to Plaintiffs for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

151. Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

**COUNT FOUR:**
**VIOLATIONS OF THE TILA, 15 U.S.C. § 1639g AND 12 C.F.R. § 1026.36(c)(3)**

152. Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 66 in their entirety, as if fully rewritten herein.

153. TILA provides that a creditor or servicer of a home loan shall provide an accurate payoff balance within a reasonable period, but within seven (7) days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(c)(3).

154. Plaintiffs, through counsel, submitted RFI #1 seeking an accurate payoff statement of the Loan pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) and Freedom received RFI #1 on April 15, 2022. *See* <u>Exhibit 5</u>.

155. Freedom was required to send an accurate payoff statement within seven (7) business days from April 15, 2022, or on or before April 26, 2022. 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(c)(3).

156. In response to Plaintiffs' request for an accurate payoff statement, Freedom failed

to timely provide Plaintiffs with an accurate payoff statement as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3), as Freedom did not provide Plaintiffs with any payoff statement at all.

157.    Plaintiffs were harmed as a result of Freedom's actions, including, but not limited to, legal fees and costs incurred with sending NOE #2, which would not have been necessary but for Freedom's failure to timely provide an accurate payoff statement. *See* Exhibit 9.

158.    As a result of its actions, Freedom is liable to Plaintiffs for actual damages, statutory damages, and attorneys' fees and costs. 15 U.S.C. § 1640(a)(1)-(3).

### COUNT FIVE:
### VIOLATIONS OF THE RMLA, R.C. 1322.01, *et seq.*

159.    Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 66 in their entirety, as if fully rewritten herein.

160.    On December 22, 2017, Ohio Governor John Kasich ("Kasich") signed into law Ohio House Bill 199 ("HB 199"), which made significant changes to the former Mortgage Brokers Act, R.C. 1322.01, *et seq.* HB 199 substantially broadened the scope of the statute, now renamed the Residential Mortgage Lending Act, to apply to mortgage lenders.

161.    On December 19, 2018, Kasich signed into law Ohio House Bill 489 ("HB 489"), to again broaden the scope of the RMLA to apply to mortgage servicers. HB 489 now defines "mortgage servicer" and inserts the term into sections throughout Chapter 1322. HB 489's title specifically "require[s] registration of mortgage loan servicers."

162.    Freedom is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

163.    "No person ... shall act as a ... mortgage servicer ... without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office

and every branch office to be maintained by the person for the transaction of business as a ... mortgage servicer ... in this state." R.C. 1322.07(A).

164.    Freedom is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(BB).

165.    Freedom, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

166.    Freedom is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License No. RM.803365.000. R.C. 1322.01(HH).

167.    Plaintiffs are each a "buyer" as defined by R.C.1322.01(I), as they are individuals whose loan is serviced by a mortgage servicer, Freedom.

168.    A registrant cannot:

    a.    Make false or misleading statements of a material fact, omissions of statements required by state or federal law, or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentations. R.C. 1322.40(B); and

    b.    Engage in conduct that constitutes improper, fraudulent, or dishonest dealings. R.C. 1322.40(C).

169.    Freedom violated R.C. 1322.40(B) by:

    a.    Making false and misleading statements as contained in Plaintiffs' mortgage statements;

    b.    Making false promises regarding correcting the property tax errors and making Plaintiffs' account whole; and,

    c.    Engaging in a continued course of misrepresentations concerning the

accounting of the Loan, as discussed through this Complaint.

170.    Freedom violated R.C. 1322.40(C) by:

    a.    Improperly paying property taxes for the 36451 Property instead of the Home;

    b.    Improperly, fraudulently, and dishonestly collecting of amounts not owed to Freedom;

    c.    Improperly and dishonestly failing to refund Plaintiffs the full amount of money that Freedom overcharged;

    d.    Improperly remitting property taxes for the Home in excess of the amount due, potentially creating further issues in the future;

    e.    Improperly failing to pay for Plaintiffs' homeowners insurance; and,

    f.    Engaging in improper and dishonest dealings by failing to correct its errors and provide Plaintiffs with important written responses to their requests for information and notices of error.

171.    Freedom's actions have caused Plaintiffs to suffer actual damages, as outlined, *supra*, at ¶ 63.

172.    As a result of Freedom's wrongful conduct, Freedom is liable to Plaintiffs for actual damages, reasonable attorneys' fees and costs incurred in connection with this action, and punitive damages. R.C. 1322.52.

173.    A registrant is required to comply with all duties imposed by other statutes or common law and:

    a.    Safeguard and account for any money handled for the buyer. R.C. 1322.45(A)(1);

    b.    Follow reasonable and lawful instructions from the buyer. R.C. 1322.45(A)(2);

    c.    Act with reasonable skill, care, and diligence. R.C. 1322.45(A)(3); and,

    d.  Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan. R.C. 1322.45(A)(4).

174.    A registrant cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

175.    Freedom violated R.C. 1322.45(A)(1) by failing to safeguard and account for Plaintiffs' escrow items and overcharging for escrow items and subsequently refusing to fully refund said overcharges.

176.    Freedom violated R.C. 1322.45(A)(2) by failing to follow Plaintiffs' reasonable and lawful instruction to pay property taxes for the Home, and not any other property.

177.    Freedom violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing when handling Plaintiffs' monthly payments, escrow account, homeowners' insurance, requests for information, and notices of errors.

178.    Freedom's actions have caused Plaintiffs to suffer actual damages, as outlined, *supra*, at ¶ 63.

179.    As a result of Freedom's conduct, Freedom is liable to Plaintiffs for actual damages, reasonable attorneys' fees costs incurred in connection with this action, and punitive damages. R.C. 1322.45(D).

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiffs Michele Burns and Joseph Kruszynski respectfully request that this Court enter an Order granting judgment against Defendant Freedom Mortgage Corporation as follows:

A.    Actual damages in an amount to be determined at trial for the allegations contained in Counts One through Five;

B.     Statutory damages of Two Thousand Dollars ($2,000.00) per borrower per violation of RESPA contained in Counts One through Three;

C.     Statutory damages of Four Thousand Dollars ($4,000.00) for the violation of the TILA contained in Count Four;

D.     Costs and reasonable attorneys' fees as to all Counts; and,

E.     Such other relief which this Court may deem appropriate.

## <u>JURY DEMAND</u>

Plaintiffs Michele Burns and Joseph Kruszynski hereby respectfully demand a trial by jury on all such claims that may be so tried.

Respectfully submitted,

/s/ *Michael A. Smith, Jr.*
Michael A. Smith, Jr. (0097147)
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Michele Burns*
*and Joseph Kruszynski*